2013 OK CIV APP 49

**SILVER CREEK INVESTMENTS, INC., Plaintiff/Appellee,**

v.

**WHITTEN CONSTRUCTION MANAGEMENT, INC., Defendant/Third–Party Plaintiff/Appellant,**

v.

**Aqua–Flo Guttering and Insulation, Inc., Jack Hall and Gloria Hall, d/b/a Hall and Sons Glass and Paint, Branham and Son Construction, Harris Plastering and Construction Co., Inc., and Gypsum Enterprises, Third–Party Defendants.**

No. 109,168.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 15, 2013.

362

Belva Brooks Barber, Barber & Barber, Poteau, Oklahoma and Lawrence A.G. Johnson, Bixby, Oklahoma, for Plaintiff/Appellee.

J. Heath Lofton, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Tulsa, Oklahoma, and J. Chris Condren, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Defendant/Third–Party Plaintiff/Appellant.

JOHN F. FISCHER, Presiding Judge.

¶1 Defendant and third-party plaintiff Whitten Construction Management, Inc. appeals the district court's post-judgment order awarding prevailing party attorney fees to Plaintiff Silver Creek Investments, Inc. That order was entered on remand from this Court following our reversal of a prior attorney fee award to Silver Creek. *See Silver Creek Investments, Inc. v. Whitten*, No. 103,-823 (March 11, 2009) (*Silver Creek I*). We find that enhancement of the amount obtained by multiplying a reasonable hourly rate by the hours reasonably incurred was not warranted and after further reductions for block billing and calculation errors we affirm the attorney fee award as modified.

## BACKGROUND

### I. *Silver Creek I*

¶2 The previous appeal involved what this Court characterized as an action for "damages arising from alleged defective construction of a hotel." Whitten had entered into a written contract to serve as general contractor for Silver Creek's project to build a three-story hotel in Poteau, Oklahoma. Pursuant to the terms of the contract, Whitten agreed, among other things, to indemnify Silver Creek against any loss or liability occasioned by its negligence or that of its employees or agents. Pursuant to an express warranty, Whitten guaranteed, for a period of one year, all work performed pursuant to the parties' agreement. Slip op. at 3–4. Within one year of substantial completion of the hotel, Silver Creek demanded that Whitten remedy various defects in the construction project, including, but not limited to, replacement of approximately 90 guest room windows that leaked, causing damage to the hotel's interior. It was later discovered that all of the windows had been installed backwards, requiring their removal, which could not be done without extensive damage to the hotel's synthetic stucco exterior. Slip op. at 4.

¶3 Silver Creek originally filed this action in September 2002, naming Whitten and the window manufacturer as defendants. Silver Creek alleged that Whitten (1) was negligent in its capacity as general contractor and breached the construction contract; (2) failed to perform in a good and workmanlike manner according to the generally accepted standard of the construction industry and in accordance with the architect's plans and specifications; (3) failed to properly oversee the subcontractors; and (4) failed to remedy defects pursuant to the terms of the express warranty and committed breach of warranty. Whitten generally denied the allegations of the petition and asserted that if Silver Creek had been damaged, it was due to the negligence of third parties over which it had no control. In a cross-claim against the window manufacturer, Whitten asserted that it was entitled to indemnity and/or contribution. Whitten also filed a third-party petition asserting claims against five other subcontractors.[1]

¶4 Jury trial began on January 17, 2006. The pre-trial order, which had not been finally settled until that day, reflected that Silver Creek would proceed to trial on alternate theories of recovery: breach of contract, breach of express and implied warranty, negligence and negligence per se. Silver Creek did not assert any claims directly against any of the third-party defendants. Some of the third-party defendants settled with Silver Creek, and one was granted summary judgment against Whitten.

¶5 Silver Creek's claims against Whitten were tried in the first stage of a bifurcated trial. The jury returned a general verdict in favor of Silver Creek and against Whitten in the amount of $184,000. Silver Creek did not participate in the second stage of the jury trial, which involved Whitten's third-party claim for indemnity against a concrete subcontractor. A special interrogatory, requested by Whitten in the trial's second stage, asked the jury to determine what amount of its $184,000 damage award it attributed to each of ten enumerated categories of dam-

1. The procedural background of the case is set forth in greater detail in our 36–page Opinion in *Silver Creek I*.

ages. The jury attributed the entire award to "removal and replacement of windows." [2]

¶ 6 Silver Creek filed an application seeking an award of attorney fees and costs as prevailing party in its action against Whitten. The district court awarded attorney fees to Silver Creek in the amount of $84,420 and costs in the amount of $2,934.84, just as requested in Silver Creek's application. The district found that Silver Creek was also entitled to an additional amount, $21,105, as an "enhancement" of the base attorney fee for a total attorney fee award of $105,525.

¶ 7 Whitten appealed the judgment entered on the jury verdict and the attorney fee award. This Court found one proposition of error, out of twenty-one asserted, to require reversal. We reversed the judgment for attorney fees because the district court had "simply awarded the total number of hours that [Silver Creek] presented, without an assessment of the extent to which [it] prevailed and with no evidence before it from which to set a fee representative of the breach of express warranty portion of the overall litigation." Slip op. at 28–29. Our decision was based on the rule that, in a multi-theory case involving judgment in which only some of the theories authorize attorney fees, the district court must distinguish, on the record, between attorney time that is compensable and that which is noncompensable. *See Green Bay Packaging*, 1996 OK 121, ¶ 38, 932 P.2d 1091, 1098. Although we made no specific determination of the issue, and could not do so from the record then before us, we noted a reduction in the number of hours was warranted, and the enhancement, if any, must also be reconsidered. We remanded the case to the district court for determination of the portion of Silver Creek's attorney fees "attributable to

pursuit of its breach of warranty claim as it pertains to the windows." Slip op. at 35–36.

## II. Proceedings on Remand

■ ¶ 8 Mandate was issued on June 4, 2009. On remand, the district court held an evidentiary hearing. Both parties presented expert testimony. Silver Creek presented the testimony of a local attorney, who testified as an expert on trial preparation for construction proceedings. This witness testified as to the reasonableness and necessity of the various charges submitted by Silver Creek for reimbursement by the district court. Silver Creek's witness explained that the warranty claim involved a core set of facts shared with the other claims and practically all of the attorneys' time. Whitten presented its own witness who testified that Silver Creek should recover only 20% of the attorney hours billed (total hours divided by five) because only one of five of its "causes of action" was fee-bearing.[3] At the close of the evidence, the district court requested that the parties submit proposed findings of fact and conclusions of law. Both parties complied. On January 6, 2011, the district court filed its journal entry regarding attorney fees. In its order, the district court set forth detailed findings of fact and conclusions of law. After examining the terms and scope of Whitten's express warranty contained in the parties' construction contract, the district court determined that 7.5 hours requested by Silver Creek represented time attributable to issues other than breach of warranty, deducted those hours from the total hours requested and multiplied the remaining 474.9 hours by $175 per hour and awarded Silver Creek $83,107.50 in trial-related attorney fees. The district court also determined that an enhancement of this amount in the amount of $21,105 was still appropriate, and included that amount in its award. Finally, the dis-

---

2. The categories in this instruction requested by Whitten were: (1) remove and replace windows, (2) remove and replace down spouts, (3) remove and replace concrete, (4) remove and repair counter tops and faucets, (5) replace draperies, (6) negligence, (7) failure to oversee subcontractors and/or follow plans and specifications, (8) failure to perform in a workmanlike manner, (9) failure to remedy defects under warranty and (10) breach of express and/or implied warranty.

3. " 'Only a single cause of action can be predicated on the same set of facts, but different remedies and theories of liability may be presented in support of each claim alleged.' " *Green Bay Packaging*, 1996 OK 121, ¶ 30, 932 P.2d at 1097 (quoting *Fleet v. Sanguine, Ltd.*, 1993 OK 76, ¶ 15, 854 P.2d 892, 901).

trict court awarded Silver Creek appeal-related attorney fees for the first appeal in the amount of $14,037.50.

¶ 9 On appeal, Whitten argues that the district court's award of trial-related and appeal-related attorney fees must be reversed because the awards are unreasonable, excessive and in violation to the law of the case as set forth in *Silver Creek I* to apportion the attorney time between the fee bearing and non-fee bearing theories of recovery.

## STANDARD OF REVIEW

 ¶ 10 The standard of review for determining the reasonableness of attorney fees is abuse of discretion. *In re Adoption of Baby Boy A,* 2010 OK 39, ¶ 19, 236 P.3d 116, 122. "[A]buse occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision." *Tibbetts v. Sight'n Sound Appliance Ctrs., Inc.,* 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046 (citations omitted). "As a general matter, an abuse of discretion review standard includes appellate examination of both fact and law issues." *Id.* "What constitutes a reasonable attorney fee is a matter addressed to the sound discretion of the trial court to be decided based on various factors." *Id.* An award of attorney fees will not be disturbed unless the appellate court finds that the district court made a clearly erroneous conclusion and judgment, against reason and evidence. *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, ¶ 32, 932 P.2d 1091, 1097.

## ANALYSIS

### I. The State of the Record and the Effect of *Silver Creek I*

 ¶ 11 We note that the record submitted in this appeal does not contain either the complete judgment roll or the transcript of the jury trial.[4] The entire record of the prior appeal would not be included in the record of this appeal unless it was specifically designated by Whitten, and it was not. As the appealing party, Whitten bears total responsibility for including in the appellate record all materials necessary for corrective relief. *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107, ¶ 7, 777 P.2d 932, 936. However, even though the record on a prior appeal does not constitute a part of the record in a later appeal, this Court can take judicial cognizance of its former opinions to inform itself of the binding effect of past appellate pronouncements in a subsequent appeal. *Curtis v. WFEC Ry. Co.,* 2000 OK 26, ¶ 3, n. 1, 1 P.3d 996, 997 n. 1; *Fent v. Okla. Natural Gas Co.,* 1994 OK 108, ¶¶ 10–12, 898 P.2d 126, 132–33.

### II. The District Court's Award of Attorney Fees on Remand

¶ 12 Whitten does not dispute Silver Creek's entitlement to prevailing-party attorney fees pursuant to 12 O.S.2011 § 939. That statute provides:

> In any civil action brought to recover damages for breach of an express warranty or to enforce the terms of an express warranty made under Section 2–313 of Title 12A of the Oklahoma Statutes, against the seller, retailer, manufacturer, manufacturer's representative or distributor, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, which shall be taxed and collected as costs.

Whitten argues that that the district court erred in attributing the bulk of the attorneys' time to the fee-bearing claim and should have taken further deductions from the fee requested by Silver Creek.

 ¶ 13 The reasonableness of attorney fees depends on the facts and circumstances of each individual case. It is well established that where prevailing-party attorney fees are authorized for only some of the claims in a multifaceted case, the award of fees must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues for which there is no authority for the award of such fees. The district court must distin-

---

**4.** The appellate record in *Silver Creek I* included three volumes of pleadings and documents, consisting of over 1,000 pages. In addition, there was a four-volume, 1,226–page jury trial transcript, as well as several other transcripts of various motion hearings, the pre-trial conference and motions for attorney fees.

guish, on the record, between the compensable and non-compensable attorney time and effort. *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 1996 OK 121, ¶ 38, 932 P.2d 1091, 1098.

¶ 14 This Court has recognized, however, that there are circumstances in which it is unnecessary and/or impracticable to completely segregate fee-bearing from non fee-bearing claims, such as when a lawsuit consists of closely interrelated claims. *RJB Gas Pipeline Co. v. Colo. Interstate Gas Co.*, 1989 OK CIV APP 100, ¶¶ 67–68, 813 P.2d 1, 13 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))[5]; *see Cline v. DaimlerChrysler Co.*, 2005 OK CIV APP 31, ¶¶ 22–23, 114 P.3d 468, 475 (holding that examining the type of work actually performed during various times, rather than looking at the claims as a whole, and considering each entry in itself, rather than in the context of a particular claim or a petition as a whole, "is more in tune with the realities of litigation"). *See also Peters v. American Income Life Ins. Co.*, 2003 OK CIV APP 62, ¶ 71, 77 P.3d 1090, 1102; *Atwood v. Atwood*, 2001 OK CIV APP 48, ¶ 75, 25 P.3d 936, 952. In all instances, however, the final calculation of the fee must bear some reasonable relationship to the amount in controversy. *See Arkoma Gas Co. v. Otis Eng'g Corp.*, 1993 OK 27, 849 P.2d 392 (this criterion serves as a check against an unfair result from a simple mathematical calculation); *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186 (using the criterion to review whether a case was "overworked").

¶ 15 In *Silver Creek I*, we noted Whitten's arguments regarding the attorney fee and concluded that it "must be reduced." We also discussed the legal method to be used by the district court in setting the fee required by *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659. But, we left for the district court the tasks of determining an appropriate reduction based on Whitten's arguments, and setting forth, on the record and with the requisite specificity, the facts and computation upon which it rested its determination. *See Morgan v. Galilean Health Enters., Inc.*, 1998 OK 130, ¶ 15, 977 P.2d 357, 364.

¶ 16 Following the hearing on remand, the district court made that determination and set forth its findings of fact in detail. The computation of hours and reasonable hourly rate were set forth in the attorney fee order. The district court addressed the factors mandated by *Burk* and made specific findings that pertain to the *Burk* criteria. There was sufficient evidence before the district court from which to fix a fee representative of the breach of express warranty claim in relation to the overall litigation. When making specific deductions as part of setting a reasonable fee, the district court considered that Whitten's express warranty was so broad that "there was very little time spent by [Silver Creek's] counsel developing, preparing and prosecution [sic] facts and evidence that would not have fallen under [its] terms." Contrary to what Whitten urges, we do not find this was an abuse of discretion. Nor do we find, contrary to Whitten's assertion in its brief, that the district court "thumbed its nose" at this Court or "disregarded" our pronouncements in *Silver Creek I*. Nevertheless, we find that further reduction of the attorney fee is warranted.

## II. Reduction for Block Billing and Rounding of Hours

¶ 17 We have noted Whitten's objections to "block billing," lack of specificity in time entries and the practice of "rounding to

---

5. In *Hensley,* the Court noted that in some cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940. The Court stated: "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult dividing the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. at 1940. Further, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 103 S.Ct. at 1943.

the nearest hour" any tasks that took more than one hour to complete. We find, consistent with what was suggested by Silver Creek's expert witness at the hearing on remand, that a 15% across-the-board reduction in the trial-related attorney fee is warranted to address those issues regarding the time-keeping methods used by Silver Creek's counsel.

### III. The Enhancement

¶ 18 In *Silver Creek I,* this Court did not specifically address the fee enhancement issue, other than to note that reversal of the base fee required that the enhancement be "reconsidered and the amount, if any, recalculated." Slip op. at 29. At the hearing on remand, it was stipulated that Silver Creek had entered into a contract with its attorney for a fixed fee arrangement at the rate of $175 per hour, and that Silver Creek was billed $84,420.00 pursuant to this contract for the work reflected on the affidavits of counsel submitted to the district court with Silver Creek's motion for attorney fees. Whitten did not object to the hourly rate set by the attorney fee contract and there was testimony supporting the reasonableness of that rate. The district court apparently found $175 to be a reasonable hourly rate for this kind of case. Whitten did challenge the number of hours charged by Silver Creek's counsel and the district court reduced those hours in the manner previously discussed and multiplied the result by $175 resulting in a lodestar amount of $83,107.50. *Burk,* 1979 OK 115, ¶ 7, 598 P.2d at 660–61 (hourly rate times hours worked should be the "lodestar" of the court's fee determination). The court then enhanced that amount by an additional $21,105.00 for a total attorney fee award of $104,212.50. In its order, the district court explained the lodestar amount was enhanced because the case was:

> a fact intensive construction defect case involving different theories on why the building was leaking and the windows were leaking (manufactured incorrectly or installed improperly) and involving development and presentation of evidence from at least six Defendants and/or Third party Defendants, which required the attorneys to devote significant time to the case in discovery, pre-trial motions, and at time of trial.

¶ 19 The legal precedents dispositive of this appeal are well established and have been applied in numerous cases in which counsel for the prevailing party was employed pursuant to a contingent fee contract. The issue in this case is whether the enhancement of an attorney fee authorized by 12 O.S.2011 § 939 is appropriate where counsel for the prevailing party was employed pursuant to a contract that provided for payment at a fixed hourly rate for the number of hours worked regardless of the client's success in the litigation. For the following reasons, we find that the district court erred in awarding an enhancement of the lodestar amount.

¶ 20 "Oklahoma courts are committed to the American Rule—every litigant is responsible for its own litigation expenses except to the extent that the rule has been modified by statute or contractual provision." *State ex rel. Dep't of Transp. v. Norman Indus. Dev. Corp.,* 2001 OK 72, ¶ 7, 41 P.3d 960, 962. "In support of the American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit...." *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). "Exceptions to the American Rule are narrowly defined." *Eagle Bluff, L.L.C. v. Taylor,* 2010 OK 47, ¶ 16, 237 P.3d 173, 179. In this breach of warranty case, the attorney fee awarded to Silver Creek is authorized by statute and specifically section 939: "the prevailing party shall be allowed a reasonable attorney fee to be set by the court...." "[S]tatutes authorizing prevailing party attorney fees are strictly applied." *Beard v. Richards,* 1991 OK 117, ¶ 12, 820 P.2d 812, 816. In the district court and on appellate review, the reasonableness of an authorized attorney fee award is determined by the criteria set forth in *Burk. In re Adoption of Baby Boy A,* 2010 OK 39, ¶ 27, 236 P.3d at 124 ("The Burk criteria are the standard by which our courts test the reasonableness of

attorney fee contracts as well as attorney fee awards.").

¶ 21 The *Burk* factors were derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974). These twelve criteria have been consistently applied by Oklahoma and federal courts since their pronouncement. However, the methodology described in *Johnson* for arriving at a reasonable attorney fee has undergone some evolution, particularly in the federal courts. *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Weeks*, 1998 OK 83, ¶¶ 16–27, 969 P.2d 347, 352–55. Most relevant for this opinion is the discussion in *Johnson* of the sixth factor, whether the fee is fixed or contingent, as helpful in determining an attorney's expectation at the beginning of the case. Noting that the criterion is not what the parties agreed but what is reasonable, the *Johnson* opinion states: "In no event, however, should the litigant be awarded a fee greater than he is contractually obligated to pay, if indeed the attorneys have contracted as to amount." *Johnson*, 488 F.2d at 718. This statement was criticized by the United States Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 92, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989), "we doubt Congress embraced this aspect of *Johnson* . . . ."

> The presence of a pre-existing fee agreement may aid in determining reasonableness. " 'The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations when he accepted the case.' " *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723, 107 S.Ct. 3078, 3085, 97 L.Ed.2d 585 (1987) quoting *Johnson*, 488 F.2d at 718. But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and its policy and purpose.

*Id.* at 93, 109 S.Ct. at 944. Exclusive reliance on a contingent fee contract in setting a court awarded attorney fee has also been criticized by the Oklahoma Supreme Court.

> [T]he trial court erred in resting its calculation of the attorney's fee award on the contingency-fee contract between Morgan and her counsel, a contract to which Galilean was a stranger. A fee contract is a matter between the client and the attorney. The amount due under that contract may not serve as a basis for computing an attorney's fee award against the unsuccessful party. It merely reflects the value of those services to the parties bound by that agreement inter se. It is not binding on the court in awarding an appropriate attorney's fee.

*Morgan v. Galilean Health Enter., Inc.*, 1998 OK 130, ¶ 13, 977 P.2d 357, 363. It is clear from these authorities that the terms of a contingent fee contract are not binding on the court, they do not provide a cap on the amount that may be awarded, nor are they alone proof that the attorney fee provided by the contract is reasonable. The contract terms do, however, provide evidence relevant to determining if a fee is reasonable. The development of this approach is clearly evident from more recent federal court cases.

¶ 22 Although the federal courts have removed any cap on an attorney fee award based on a contractual provision, at least with respect to contingent fee contracts, they have been increasingly reluctant to enhance fees in civil rights cases beyond the amount computed by multiplying a reasonable rate times the hours reasonably and necessarily expended solely because the attorney's right to receive a fee from the client was contingent. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (normally the reasonable fee is determined by the product of reasonable hours times reasonable rate); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (the product of reasonable hours times reasonable rate is presumed to be the reasonable fee except in rare and exceptional cases); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (there is a strong presumption that the reasonable fee is the product of reasonable hours times reasonable rate); *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (enhancement for contingency is not permitted by the civil rights fee-shifting statutes); and, *Perdue v. Kenny A. ex rel. Winn*, 559

U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (enhancement cannot be based on the same factors used to determine the reasonable rate or the hours reasonably expended).

¶ 23 Nonetheless, in Oklahoma, the basic formula remains the same. "Generally, the correct formula for calculating a reasonable fee is to: 1) determine the compensation based on an hourly rate; and 2) enhance the fee through consideration of the factors outlined in *Burk v. Oklahoma City*." *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890, 895 (footnote omitted). And, although *Burk* involved an "equitable fund" case, the Oklahoma Supreme Court "has not limited the standards set out in Burk for determining the amount of a fee to cases involving an 'equitable fund', and has applied them generally where attorney fees are otherwise recoverable against the opposing party." *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.*, 1987 OK 16, ¶ 13, 737 P.2d 1186, 1188. However, we find nothing in *Burk* or any of the cases applying *Burk* requiring the enhancement of the lodestar. Further, even though the Burk factors are generally applicable, case law reflects that the purpose of a fee-shifting statute is critical to the analysis. "[F]ee-shifting statutes are interpreted according to their own terms." *State ex rel. Dep't of Transp. v. Norman Indus. Dev. Corp.*, 2001 OK 72, ¶ 17, 41 P.3d at 966 (footnote omitted) (limiting attorney fees in condemnation cases to those "actually incurred" as required by 27 O.S. 1991 § 11 makes a landowner whole but prohibits an enhanced fee beyond what the landowner is contractually obligated to pay an attorney). *Cf., Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (liberal application of the attorney fee provision of Title VII promotes the important private enforcement of civil rights litigation); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (purpose for attorney fees pursuant to 42 U.S.C. § 1988 is to attract competent counsel to prosecute civil rights claims); *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (unlike contingent fee arrangements in personal injury tort litigation, section 1988 encourages the vindication of important constitutional rights that cannot be valued in money alone).

¶ 24 Here, we are required to interpret the exception to the American Rule stated in section 939. The intent of a statute is ascertained from the whole act based on its general purpose and objective. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d 800, 803 (citations omitted). Section 939 does not involve shifting fees in cases where broad constitutional rights are litigated. There is no language in this statute suggesting the attorney fee should be set to penalize a losing litigant to deter future misconduct or the need to entice competent lawyers to take on unpopular cases without any assurance they will be paid. Section 939 shifts attorney fees to the losing party in cases involving commercial transactions between private litigants. We find no basis in the statute for determining reasonable attorney fees other than in that context.

¶ 25 Oklahoma Supreme Court jurisprudence in this area has previously concerned contingent fee contracts. There is a difference between a contingent fee contract and a fixed fee contract.

> Often contingent fee agreements are the only means possible for litigants to receive legal services ... contingent fees are still the poor man's key to the courthouse door. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court.

*Sneed v. Sneed*, 1984 OK 22, ¶ 3, 681 P.2d 754, 756. Because payment pursuant to a contingent fee contract is uncertain and depends on the outcome of the case, courts have often found a premium over a straight fixed fee contract to be reasonable when awarding attorney fees. *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶¶ 25–27, 171 P.3d 890, 898 (finding an incentive fee was appropriate in addition to the lodestar amount where counsel took the case knowing it was most likely he would not receive any fee). The contingent nature of the attorney's employment allows the district court to "adjust upward the basic hourly rate by allowing a risk-litigation premium based on the likelihood of success at the outset of the represen-

tation." *Morgan*, 1998 OK 130, n. 30, 977 P.2d 357 (citing *Brashier v. Farmers Ins. Co. Inc.*, 1996 OK 86, n. 22, 925 P.2d 20, 25 n. 22). However, we find no basis for a litigation premium or incentive fee when the receipt of attorney fees is certain from the outset of the case. *See Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins. Co.*, 1980 OK 120, ¶¶ 6–7, and n. 4–6, 615 P.2d 291, 294 and n. 4–6, (where the attorneys' compensation is not contingent, there is no "risk of non-recovery" factor). We find instructive the observation in *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (emphasis in original): "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

■■■■■ ¶ 26 The attorney fee contract in this case was not contingent. Silver Creek agreed to pay its counsel $175 per hour for the hours worked. Although not controlling on the court, the terms of that contract reflect economic decisions by the parties and evidence market conditions that aid the court in determining what a reasonable attorney fee should be.[6] The contract is evidence that Silver Creek was able to find counsel willing to undertake the representation on an hourly rate basis. The contract also enabled Silver Creek to limit its exposure for counsel fees before it entered the uncertain world of litigation. That expectation is also evidence of the amount of attorney fees Silver Creek expected to shift to Whitten if it was successful. From the attorneys' standpoint, counsel was willing to represent Silver Creek with the assurance that they would be paid the contract amount, and no more, regardless of the outcome. If the case was complex and involved multiple parties, more hours would be required resulting in a higher fee.

¶ 27 Although the fundamental determinant is reasonableness, ignoring the terms of the fee contract between counsel and the prevailing party would frustrate the purpose of the exception to the American Rule in section 939, that purpose being to shift the reasonable litigation costs of the prevailing party to the losing party. We recognize that there is no express limitation in section 939 to litigation costs "actually incurred" as there is the condemnation fee-shifting statute, 27 O.S.2011 § 11, at issue in *State ex rel. Department of Transportation v. Norman Industrial Development Corp.*, 2001 OK 72, 41 P.3d at 960. Nonetheless, where the client's expected litigation costs are set in advance and the end result is reasonable, imposing additional costs on the losing litigant serves no purpose consistent with a strict construction of section 939 absent unusual circumstances not present here.[7]

¶ 28 We find the federal court decisions discussed in this Opinion instructive with respect to the proposition that multiplying the number of hours reasonably and necessarily expended by a reasonable hourly rate will produce the reasonable attorney fee to be paid by the losing litigant pursuant to 12 O.S.2011 § 939 in most cases. The amount involved may result in an adjustment of that award. *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186. And the amount awarded may be more or less than the client is contractually obligated to pay. *State ex rel. Oklahoma Bar Ass'n v. Weeks*, 1998 OK 83, ¶¶ 29–30, 969 P.2d at 355. Nonetheless, the lodestar amount in this case, except as modified by this Opinion, is the appropriate attorney fee award. The "fact intensive" nature of the case and the multiple theories and parties involved cited by the district court to justify an enhancement demonstrate the reasonableness of the $175 hourly rate. They do not

---

6. The reasonableness of that contract as between those parties is determined by Rule of Professional Conduct 1.5(a), 5 O.S.2011, ch 1, app. 3–A: "A lawyer shall not make an agreement for, charge or collect an unreasonable fee," and *Burk*. "[A]n attorney's fee must in every instance be reasonable. This is so whether the fee is to be paid by the lawyer's client or by the losing litigant. The criteria for determining a reasonable attorney's fee stand declared in *State ex rel. Burk v. City of*

*Oklahoma City." Morgan v. Galilean Health Enters., Inc.*, 1998 OK 130, ¶ 14, 977 P.2d 357, 364. The reasonableness of the Silver Creek attorney fee contract is not an issue in this appeal.

7. For example, a contract between relatives or determined by special considerations may not accurately reflect the market for an attorney's services.

independently justify any additional award. Nor are there any other factors in this case that would justify an additional premium or incentive beyond the lodestar amount. Accordingly, we find that the $21,105 enhancement must be deducted entirely from the fee computation.

### IV. Calculation Error in Appeal–Related Fee

¶ 29 The district court awarded Silver Creek a $14,037.50 attorney fee for appeal-related services in *Silver Creek I*. In its order, the district court set forth the formula it used to calculate that amount: "175.00 per hour for 51.65 hours." That amount, when correctly calculated, is $9,038.75. We find that amount to be reasonable and modify the award for appeal-related services accordingly.

1. $104,212.50 total attorney fee awarded by the district court
 − $21,105.00 improper enhancement

 $83,105.50 lodestar fee

2. − $12,465.83 15% percent reduction for block billing and rounding

 ($83,105.50 × .15 = $12,465.83)
 $70,639.67 total trial-related fee award

3. $14,037.50 appeal-related attorney fee
 − $4,998.75 calculation error

 $9,038.75 total appeal-related fee award

4. $70,639.67
 + 9,038.75

 $79,678.42 total attorney fee award

Therefore, we modify the attorney fee awarded by the district court to $79,678.42.

¶ 31 **AFFIRMED AS MODIFIED.**

BARNES, V.C.J., and WISEMAN, J., concur.

### CONCLUSION

¶ 30 After remand from this Court in *Silver Creek I*, the district court reduced the base attorney fee award for trial-related services, added an enhancement and awarded a total attorney fee of $104,212.50. Pursuant to our analysis in this Opinion, we find that the attorney fee for trial-related services should be further reduced as follows: